## COMMON PLEAS AND PROBATE COURTS OF OHIO,

ALSO OF THE

## SUPERIOR COURT OF CINCINNATI,

SPECIAL AND GENERAL TERMS.

(Fairfield County Court of Common Pleas.)

### STATE OF OHIO v. CHARLES HUDSON.

The facts are sufficiently stated in the opinion of the court. The question made by the defendant's motion is whether the power of the Governor of Ohio, in the matter of granting and issuing requisition for fugitives from justice, is limited by section 95 of the Revised Statutes of Ohio, to cases of felony? *Held*: 1st. That the power of the governor in such matter is not so limited by that section. 2nd. That under the constitution of Ohio and the constitution of the United States, and the laws passed by congress in pursuance of the latter, the Governor of Ohio has the authority, and it is his duty to grant and issue such requisition in cases of *misdemeanor*, as well as in cases of felony, committed against the law of Ohio.

(Decided October, 1893.)

Opinion of the court on the question of extradition.

SLOUGH, J. (orally.)

In the case of the *State of Ohio* v. *Charles Hudson*, who stands indicted for keeping and exhibiting for gain a gaming device, which, under our statute, is a misdemeanor, the defendant presents to the court a motion for his discharge on the ground that this court has no jurisdiction of his person. The alleged facts set forth in the defendant's motion are as follows :

After reading the motion the court continued :

By the facts set forth and exhibited to the court in this motion, and by the admitted facts outside and beyond the motion, it appears to the court that at the April term, this year, of this court, Charles Hudson was indicted for the offense set forth in the indictment and mentioned in this motion ; that at or about the time the grand jury returned the indictment mentioned and referred to in the motion, and before the capias or warrant had issued upon that indictment, before the defendant was called upon to answer to that indictment in any lawful way, he left the state of Ohio and went to the state of West Virginia ; that he there acquired a residence or domicile, and that afterwards and in September or October of the present year, application was made to the Governor of the state of Ohio and evidence submitted and presented in support of the application for a requisition upon the governor of the state of West Virginia for a warrant from the Governor of West Virginia, to arrest Charles Hudson, and to deliver him into the custody of an officer appointed by the governor of Ohio to return him into Ohio and within the jurisdiction of this court ; and that upon the requisition of the Governor of Ohio, the Governor of West Virginia is-

sued his warrant, and caused the arrest thereunder of said Charles Hudson, and he was delivered to the officer appointed by the Governor, and by that officer was brought back to Ohio and within the jurisdiction of this court. It is claimed by counsel for the defendant, in support of this motion for his discharge, and in support of their claim that this court has not lawful jurisdiction of the person of the defendant, that the requisition issued by the Governor of Ohio upon the Governor of West Virginia for the defendant was *beyond the power* of the Governor of Ohio to issue; that the application made to the Governor of Ohio for the requisition and the granting of the requisition, and all the proceedings of the prosecuting attorney of this county who made the application, and of the governor in respect of that requisition, are illegal and void, for the reason, as is alleged, that the indictment against the defendant was only for a *misdemeanor*, and that the Governor of Ohio is without power to issue a requisition for the extradition of a person charged with any crime other than treason or felony.

Now, if counsel for defendant are right in the claim made by them that the governor is without lawful authority to issue a requisition for the arrest and return from another state of a fugitive from justice who stands charged with only a misdemeanor, this court would not have jurisdiction of the person of the defendant and would be bound to discharge him without putting him on trial for this alleged offense. The court has given such careful and thorough examination and consideration of the question presented by this motion as it was able to give, and the conclusion reached compels the court to say that the view of the question taken by this motion, and presented by counsel in argument, is a limited and narrow and imperfect view. The court finds upon examination of the law of the question that the correctness of the claim of defendant's counsel in respect to this matter depends upon two matters of law. The first one is, whether the granting by the Governor of the state of Ohio of a requisition upon the governor of another state for the arrest and return of a fugitive from justice from this state, does so in the performance of an *executive* function or of a *ministerial* function. And secondly, whether under the constitution of the United States and the laws enacted by Congress in pursuance thereof upon this subject of extradition, a *duty* is imposed upon the Governor of Ohio as well as the governors of each of the other states.

Now, if this matter of granting and issuing a requisition by the Governor of Ohio is the performance of an *executive* function, then the exercise of that power cannot be interfered with, either by the judiciary of the state or by the legislature of the state.

It must be known and kept in mind that the executive branch of our government is, in the first place, *co-ordinate* with the other two branches of the government, the legislative and the judicial. And it must be remembered, also, that the *supreme* executive power of the state is vested in the governor, and it is the settled law of Ohio, settled by the decisions of our court of last resort, that in the exercise of *executive functions merely*, the governor's action is not reviewable or correctible either by the judiciary or by the legislature. In respect of the exercise of his executive functions the governor is not like any other officer of the state who is amenable to the acts of the legislature of the state respecting his official duties.

The Governor of Ohio derives his power, his executive power, from the constitution of the state. He derives it from the people of the state through and by this constitution, and in the exercise of the executive functions under it, he acts according to his *own judgment and discretion*, and whenever the judiciary undertakes to interfere with such exercise of his executive functions, the governor can commandinly say: "Hands off, judiciary;" and whenever the legislature undertakes to interfere with the exercise of his executive functions, he can say "Hands off, legislature, this is none of your business. This is *my* business."

Section five, article III, of our state constitution, provides that "the *supreme* executive power of this state shall be vested in the governor;" and the very next section, section 6, provides tha he shall see *that the laws of the state are faithfully executed*, and another section of the constitution says that the officers, including governor, shall take an oath to support the constitution of the United States and the constitution of the state of Ohio, and by that oath of office, and under the several provisions of the constitution which I have mentioned, the governor is, in the first place, invested with the supreme executive power of the state, and, secondly, it is enjoined upon him that he *shall see that the laws of the state are faithfully executed*. This is one of the requirements of his oath of office of governor.

Appended to this section 5 of our constitution, (as published·in the Ohio Revised Statutes), declaring that the supreme executive power of this state shall be vested in the governor, are notes of several decisions which settle the question of the right of the judiciary to interfere with the governor in the performance of his merely executive functions. And I have another case which I may refer to, in which the same rule is laid down in respect of the general assembly of the state interfering with the governor in the performance of his purely executive functions. The doing of acts by the governor which depend upon his *judgment* and *discretion* were alone in that case considered—the performance of executive functions.

In the 34th Ohio St., a case is reported in which the Supreme Court says in effect that, subject to the duty enjoined by the constitution of the United States and the laws passed in pursuance thereof, in respect of this matter of extradition, the governor acts in those applications for requisition upon his judgment and discretion, and in that case that court holds that the governor, for that reason, may revoke a requisition which he has improvidently issued ; but any one who will read that case will see several things for his enlightenment. The first thing he will see will be that the whole subject of extradiction is controlled by the constitution of the United States and the laws passed in pursuance thereof on that subject. He will see that the governors of each and all of the states of this Union, subject to the duty enjoined upon them by that provision of the constitution of the United States, and the acts of congress made in pursuance thereof, are invested with full judgment and discretion and authority in the matter of granting requisitions for fugitives from justice. You will see it clearly implied, if not plainly expressed, that the duty of a governor of the state upon whom a requisition is made to surrender a fugitive from justice from the state demanding his arrest and return, is imperative to honor the requisition. A governor upon whom requisition is made has no discretion ; he may make an inspection of the papers and see that they are regular and the charges are legally made, but if the crime is clearly and legally charged, if the case is clearly and legally stated, he is bound to do so, and you will find this is so from the view taken by the Supreme Court, and that they, in effect, say that the duty of the governor of the state into which the fugitive from justice comes, the duty of the governor of that state to issue the warrant for his arrest, etc., implies a corresponding right and duty on the part of the governor of the state from which the fugitive fled, to demand his surrender. The whole subject involved in this motion is clearly presented and, in effect, determined in that case,·although the question there was whether the governor had the power to revoke a requisition which he had concluded he had improvidently issued. So upon the first matter upon which depends the decision of the motion in this case, namely: whether the granting of a requisitien by the governor of Ohio is a merely executive function, the court is clearly satisfied that it is, and neither the judiciary nor the legislative power of the gov-

ernment can interfere with the exercise by him of that power. And, although the court has no desire to speak lightly of a statute enacted by the general assembly, yet the court is satisfied that section 95 of the Ohio Revised Statutes, on the subject of extradition, which provides that the governor may issue a requisition for the extradition of a person charged with felony, is neither a grant of power to the governor, nor a limitation of his power. The governor would have the power and right to exercise the same power that he does exercise in granting requisitions without this statute. I think that those sections of the statutes were efforts of particular lawyers who did not want criminals charged with less offenses than felonies to be extradited and punished.

It is clearly the duty of the Governor of Ohio to act for the state, and it is clearly his duty, under the constitution of our own state, in seeing about the execution of the laws of the state, to grant a requisition for all persons charged with violations of the criminal statutes of Ohio who flee from the jurisdiction in Ohio in which the crime was committed and go into another state, upon an application for the arrest and return of such fugitive from justice. It appeared to be assumed in argument yesterday, and it was to some extent assumed by the court, that this question whether extradition could be had for a misdemeanor had been *expressly* judicially determined in this state; but so far as I have been able to examine the authorities, so far as the question has been judicially determined in this state (if not by the supreme court of the state, by the inferior courts), it will be found upon examination of the Ohio decisions that the questions directly passed upon have been these:

*First*—Whether a fugitive from justice from this state who is charged with the commission of one crime could, under the extradition authority of the governor, be brought back to this state and tried for *another* crime; and it has repeatedly been held by the inferior courts of this state that if a man committed a crime in Ohio, for example, and fled to New York, and the governor of Ohio issued a requisition upon the governor of New York for his arrest and return, and he was so arrested and returned by the governor of New York, and after he was brought into Ohio was indicted for a different offense, and it was undertaken to prosecute him for *that* offense, he could not be held and tried for *that* offense, and that was accepted as the settled law of this state, But within the last year or two, that old notion about the legality of trying a man for a *different* offense from the one for which he had been extradited, has been rejected by the decision of the Supreme Court of the United States, in a case in which Judge JACKSON wrote and announced the opinion. The question in that case is whether the governor of Georgia could issue a requisition upon the governor of New York for a man who was domiciled there, but who was charged with the crime of "swindling" in Georgia, and whether, under the requisition of the governor of Georgia, he could be brought back to Georgia and tried for the offense of *forgery*, a wholly different offense from the one for which he was extradited.

That case went from the court where the trial was had to the Supreme Court of Georgia, and next to the Supreme Court of the United States, and the United States Supreme Court affirmed the decision of the Georgia state Supreme Court, holding that he could be extradited for one crime and tried for another and different crime. Our state Supreme Court had decided otherwise.

The only other question on this subject that has been directly considered and determined by our state court of last resort, is whether the governor after issuing a requisition and finding that it had been improperly issued, could revoke it, and the Supreme Court held that he could do so. Although the question decided by the Supreme Court of the United States in the

opinion by Judge Jackson, was wholly different from the question at bar, yet nearly the whole of the opinion of Judge Jackson in that case, is applicable to the very question made here. Of course there are portions of it which apply exclusively to the question involved and determined in that case. I read from the opinion of the court announced by Judge Jackson :

"The question presented for our consideration and determination is whether the constitution and laws of the United States impose any such limitations or restrictions upon the power and authority of a state to indict and try persons charged with offenses against its laws, who are brought within its jurisdiction under interstate rendition proceedings. While cases involving questions on *international* extradition and *interstate* rendition of fugitives from justice have frequently been before this court for decision, this court has not passed upon the precise point here presented. The second clause of section 2, article IV, of the constitution of the United States, declares that " a person charged in any state with treason, felony or *other crime*, who shall flee from justice and be found in another state, shall, on demand of the *executive* authority of the state from which he fled, be delivered up, to be removed to the state having jurisdiction of the crime." To carry this provision into effect, congress passed the act of February 12, 1793. In the act of February 12, 1793, the first and second sections, which have been re-enacted and embodied in sections 5278 and 5279 of the Revised Statutes of the United States, prescribe the methods of procedure on the part of the state demanding the surrender of the fugitive and provide that : "It shall be the duty of the *executive authority* of the state or territory to which such person has fled, to cause him to be arrested and secured, and cause notice of the arrest to be given the executive authority making such demand, or to the agent of such authority appointed to receive the fugitive, and to cause the fugitive to be delivered to such agent when he shall appear," and provides further that the agent "so appointed who shall receive the fugitive into his custody shall be empowered to transport him to the state or territory from which he has fled."

"Upon these provisions of the organic and statutory law of the United States rest exclusively the right of one state to demand and the obligation of the other state upon which the demand is made to surrender a fugitive from justice. Now, the proposition advanced on behalf of the plaintiff in error in support of the federal right claimed to have been denied him is that inasmuch as *interstate* rendition can only be effected when the person demanded as a fugitive from justice is duly charged with some *particular* offense, or offenses, his surrender upon such demand carries with it the implied condition that he is to be tried alone for the *designated crime*, and that in respect to all offenses other than those specified in the demand for his surrender, he has the same right of exemption as a fugitive from justice extradited from a *foreign nation*. This proposition assumes, as is broadly claimed, that the states of the union are *independent governments*, having the full prerogatives and powers of nations, except what has been conferred upon the general government, and not only have the right to grant, but do in fact afford to all persons within their boundaries an asylum as broad and secure as that which *independent nations* extend over its citizens and inhabitants. Having reached, upon this assumption, or this process of reasoning, the conclusion that the same rule should be recognized and applied in *interstate* rendition as in *foreign* extradition of fugitives from justice, the decision of this court in the *United States* v. *Raucher*, 109 U. S. 407 *et seq.*, is invoked as a controlling authority on the question under consideration. If the premises upon which this argument is based were sound, the conclusion might be correct. But the fallacy of the argument lies in the assumption that the states of the union occupy toward each other, in

respect to fugitives from justice, the relation of *foreign nations* in the same sense in which the general government stands toward *independent sovereignties* on that subject; and in the further assumption that a fugitive from justice acquires in the state to which he may flee, some *state* or *personal* right of *protection*, improperly called a right of asylum, which secures to him exemption from trial and punishment for a crime committed in another state, unless such crime is made the special object or ground of his rendition. This latter position is only a restatement, in another form, of the question presented for our determination. The sole object of the provision of the constitution and the act of congress to carry it into effect is to secure the surrender of persons accused of crime, who have fled from the justice of a state, whose laws they are charged with violating. Neither the constitution nor the act of congress providing for the rendition of fugitives upon proper requisition being made, confers either expressly or by implication, *any* right or privilege upon such fugitive under and by virtue of which they *can assert, in the state to which they are returned*, exemption from trial from *any criminal act* done therein. No purpose or intention is manifested to afford them any immunity or protection from and punishment for any offenses committed in the state from which they flee. On the contrary, the provisions of both the constitution and the statute extend to *all crimes and offenses punishable by the laws of the state where the act is done.*"

The case of the *United States* v. *Rauscher*, 119 U. S. 407, has no application to the question under consideration, because it proceeded upon the ground of a right given impliedly by the terms of a treaty between the United States and Great Britain, as well as expressly by the acts of congress in the case of a fugitive surrendered to the United States by a foreign nation. The treaty which specified the offenses that were extraditable, and the statutes of the United States passed to carry it and like treaties into effect, constituted the supreme law of the land, and were construed to exempt the extradited fugitive from trial for any other offense than that mentioned in the demand for the surrender. There is nothing in the constitution or statutes of the United States in reference to *interstate* rendition of fugitives from justice which can be regarded as establishing any compact between the states of the union, such as the Ashburton treaty contains, limiting their operation to particular or designated offenses. On the contrary, the provisions of the organic and statutory law embrace crimes and offenses of *every character and description* punishable by the laws of the *state where the forbidden acts are committed*. It is questionable whether the states could constitutionally enter into any agreement or stipulation with each other for the purpose of defining or limiting the offenses for which fugitives would or should be surrendered. But it is settled by the decisions of this court that, except in the case of a fugitive surrendered by a foreign government, there is nothing in the constitution, treaties or laws of the United States which exempts an offender, brought before the courts of a state for an offense against its laws, from trial and punishment even though brought from another state by unlawful violence, or by abuse of legal process."

And the court further said : "As to the removal from the state of the fugitive from justice in a way other than that which is provided by the second section of the fourth article of the constitution, which declares that 'a person charged in any state with treason, felony or other crime, who shall flee from justice and be found in another state, shall, on demand of the executive authority of the state from which he fled, be delivered up to be removed to the state having jurisdiction of the crime,' and the laws passed by congress to carry the same into effect, it is not perceived how that fact can affect his detention upon a warrant for the commission of a crime within the state to which he is carried. The jurisdiction of

the court in which the indictment is found is not impaired by the manner in which the accused is brought before it. There are many adjudications to this purpose cited by counsel on the argument to some of which we will refer."

. To apply the rule of international or foreign extradition, as announced in *United States* v. *Rauscher*, 119 U. S. 407, to interstate rendition, involves the confusion of many essentially different principles. In the former the extradition depends upon treaty, contract or stipulation, which rests upon good faith, and in respect to which the sovereign upon whom the demand is made can exercise discretion as well as investigate the charge on which the surrender is demanded, there being no rule or comity under and by virtue of which independent nations are required or expected to withhold from fugitives within their jurisdiction the right of asylum. In the matter of interstate rendition, however, there is the binding force and obligation, not of contract, *but of the supreme law of the land which imposes no conditions or limitations upon the jurisdiction and authority of the state to which the fugitive is returned.*

I have only read a portion of this clear and unmistakable decision which shows that the subject of interstate extradition is a wholly different thing from extradition between independent governments or sovereignties, and which shows clearly that the duty is imposed by the constitution of the United States and the laws passed in pursuance thereof upon the executive of each state to act in the matter of granting requisitions to enforce the laws of the states as well as to punish violation of the laws of the United States. But the power of the executive of Ohio, and the character of that power, are sufficiently shown by our state constitution; in the first place, I feel perfectly satisfied that the governor of Ohio acts independently of either the legislative or judicial power of the state government in this matter. I am also satisfied that he acts in pursuance of a duty imposed upon him by the laws and constitution of the United States, the supreme law of the land, and that in respect of interstate extradition no state can be a domicile or safe refuge for any person charged with crime by the laws of another state, and any attempt upon the part of our legislature to either grant or limit the executive power of the governor in the matter of granting such requisition is simply void and of no effect.

My first impressions respecting the matter of the jurisdiction of the person of this defendant are wholly changed. I am satisfied that the law of the land in respect to interstate extradition authorizes the Governor of Ohio, and makes it his duty, to see that the laws of the state are executed, and upon proper application and evidence to him to grant a requisition, without regard to the character or degree of the crime, whether it be treason, felony or misdemeanor. Therefore this motion must be overruled.

As the personal liberty of persons is always a matter of great importance, I fee l it my duty in this case in view of the question raised, to grant a stay of execution until this question can be heard by the circuit court.

To the opinion and ruling of the court as herein expressed, the defendant by his counsel, excepted.

(The circuit court for Fairfield county, on January 11, 1895, affirmed this decision.)

*J. M. Wright, prosecuting attorney*, for State.

*McCleery & Dolson*, for defendant.